J-S32004-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DARRELL MACK | : | |
| | : | |
| Appellant | : | No. 2723 EDA 2016 |

Appeal from the PCRA Order August 19, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0002453-2007

BEFORE:   GANTMAN, P.J., STABILE, J., and FITZGERALD, J.*

MEMORANDUM BY GANTMAN, P.J.:                    **FILED JULY 26, 2017**

Appellant, Darrell Mack, appeals from the order of the Philadelphia County Court of Common Pleas, which denied his first petition brought pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

This Court previously set forth most of the relevant facts of this case as follows:

> On April 23, 2006, at 11:18 p.m., police responded to a radio call about a shooting at 45th and Laird Streets in Philadelphia.  Police found 19-year-old Brian Woolfolk ["Victim"] lying on the ground and bleeding from his head.  A bicycle was next to his body.  Medics pronounced…[V]ictim dead at the scene.  He had been shot four times: in the head, in each shoulder, and in his left buttock.  Ballistic evidence recovered from the street

_____

[1] 42 Pa.C.S.A. §§ 9541-9546.

_____

*Former Justice specially assigned to the Superior Court.

and…[V]ictim's body were determined to be .38/357 caliber and all fired from the same weapon.

As a result of their investigation into the shooting, the police obtained an arrest warrant for Appellant on October 20, 2006. The next day, [the police] executed the arrest warrant, and obtained and executed a search warrant for Appellant's home. There, the police recovered a cell phone, Appellant's social security card, and a used shooting range paper target. A ballistics expert determined that the bullet holes in the paper target were consistent with the bullets used to kill…[V]ictim. …

A neighbor, Ms. Bates, testified at trial that she witnessed Appellant (whom she knew as "Dirty D") approach…[V]ictim and talk with him. Appellant rifled through…[V]ictim's pockets. When…[V]ictim dismounted his bike, Ms. Bates heard gunshots. She ran out of her house, saw…[V]ictim lying in the street, and screamed "Dirty D just shot him." Another neighbor, Ms. Calloway, told detectives that she heard gunshots on April 23rd while she was in bed. She saw Ms. Bates outside screaming, "Dirty D just shot him." Ms. Calloway also stated that she had seen Appellant carrying something that looked like a gun prior to the shooting. At trial, however, Ms. Calloway denied seeing Appellant with a gun. The Commonwealth introduced her prior [inconsistent] statement through the testimony of Detective Morton.

\* \* \*

***Commonwealth v. Mack***, No. 545 EDA 2009, unpublished memorandum at 1-3 (Pa.Super. filed September 24, 2012).

The next witness, Walter Williams, sent the police a letter from prison and claimed to have information about Victim's murder. When interviewed, Mr. Williams told the police that he saw Victim sitting on his bike talking to Appellant at 45th and Laird Street, heard gunshots several seconds later, and saw Appellant going through Victim's pockets while Victim was lying on the

ground. Mr. Williams also said he saw Appellant holding a gun in his hand. At trial, Mr. Williams recanted his statement. The Commonwealth asked Mr. Williams if anyone approached him about this case before trial, and Mr. Williams said an investigator questioned Mr. Williams at his house. The Commonwealth introduced Mr. Williams' prior inconsistent statement through the testimony of Detective Morton. Detective Morton said he contacted Mr. Williams about testifying at Appellant's trial, and Mr. Williams indicated he was concerned about his family's safety and his well-being. During closing arguments, the prosecutor addressed Mr. Williams' recanted statement:

> What else is interesting? They talk about this investigator coming out, Walter Williams told us about, that an investigator from the defense came out to him and he signed a statement for them. He says in that statement, he says to you: "They are on my porch at my house," at an address they keep repeating wasn't the address he gave to police.
>
> **They are not doing anything wrong, I don't mean to suggest that, by interviewing witnesses.**
>
> He moved away from his old address and people are coming to this house and asking him: "I am working for [Appellant] and I want to know: What did you see on that night?
>
> Walter Williams is: "Oh, my God. I am at a new house and they still found me and they want me to say what I knew about that night."
>
> He doesn't say: "I lied to the police about the violation of parole." He says: "I don't know [Appellant]. I have nothing to do with this, nothing to do with this case" because [Mr. Williams] is panicking.

> [Mr. Williams] has a guy on his porch who found him,
> sought him out and still asking him about this case.
> Walter Williams is scared to death, just as he told
> Detective Morton; he is afraid. He doesn't want to put his
> life at stake. He wanted to tell the police originally what
> happened. When push comes to shove, it's his life as
> opposed to [Victim's] life, who is already dead.

(N.T. Trial, 10/29/08, at 17-18) (emphasis added).[2]

Procedurally, a jury convicted Appellant on October 29, 2008, of first degree murder, robbery, and firearms not to be carried without a license. The court sentenced Appellant on January 29, 2009, to life imprisonment for the murder conviction, a consecutive term of five (5) to ten (10) years' imprisonment for the robbery conviction, and a consecutive term of three and a half (3½) to seven (7) years' imprisonment for the firearms conviction. This Court affirmed the judgment of sentence on September 12, 2012, and our Supreme Court denied allowance of appeal on May 13, 2013. Appellant did not seek further direct review, and his judgment of sentence became final on August 11, 2013.

Appellant timely filed a *pro se* PCRA petition on May 2, 2014. The PCRA court appointed counsel, who subsequently filed an amended PCRA petition and supporting brief on November 9, 2015. On May 3, 2016, the Commonwealth filed a motion to dismiss Appellant's PCRA petition. The

---

[2] We observe there are three separate transcripts for October 29, 2008. The relevant transcript begins with the prosecutor's closing arguments.

PCRA court issued notice on July 15, 2016, of its intent to dismiss Appellant's PCRA petition pursuant to Pa.R.Crim.P. 907. Appellant did not respond. The PCRA court denied relief on August 19, 2016. On August 22, 2016, Appellant timely filed a notice of appeal. The PCRA court ordered Appellant on August 31, 2016, to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b). Appellant timely complied on September 8, 2016.

Appellant raises two issues for our review:

> [WHETHER] APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE ON APPEAL A CLAIM THAT THE PROSECUTOR ENGAGED IN PROSECUTORIAL MISCONDUCT WHEN SHE MADE AN ARGUMENT FROM WHICH THE JURY COULD INFER THAT [APPELLANT] THREATENED WITNESSES[?]
>
> [WHETHER] TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO A CLOSING COMMENT MADE BY THE PROSECUTOR REGARDING WHAT MAY HAVE OCCURRED TO THE MURDER WEAPON[?]

(Appellant's Brief at 7).

Our standard of review of a grant or denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error. *Commonwealth v. Conway*, 14 A.3d 101 (Pa.Super. 2011), *appeal denied*, 612 Pa. 687, 29 A.3d 795 (2011). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. *Commonwealth v. Boyd*, 923 A.2d 513 (Pa.Super. 2007), *appeal*

*denied*, 593 Pa. 754, 932 A.2d 74 (2007). We exercise *de novo* review over the PCRA court's legal conclusions. ***Commonwealth v. Spotz***, 610 Pa. 17, 44, 18 A.3d 244, 259 (2011).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable George W. Overton, we conclude Appellant's issues merit no relief. The PCRA court opinion comprehensively discusses and properly disposes of the questions presented. (***See*** PCRA Court Opinion, filed November 4, 2016, at 3-10) (finding: **(1)** viewed in context, prosecutor's comment did not imply Appellant threatened witness (Mr. Williams) to prevent him from testifying; rather, prosecutor suggested witness recanted portions of his original statement at trial and refused to admit that he had spoken with police because witness panicked; prosecutor argued witness feared implications of being involved with Appellant's case; witness told police he feared for safety of himself and his family; prosecutor gave jury possible explanation for witness' partial recantation; prosecutor's statement was proper; **(2)** in his closing argument, trial counsel emphasized that police did not find gun and/or bullets in Appellant's home; it was proper for prosecutor to respond by saying it was no surprise that Appellant did not retain possession of murder weapon because there was six-month gap in time between incident in April 2006 and Appellant's arrest in October 2006; prosecutor suggested explanation for why police did not find murder weapon in Appellant's home

and highlighted that police found shooting range target with holes consistent with ammunition police found at scene of incident and in Victim's body; prosecutor's statements were proper; because his claims lack arguable merit, Appellant failed to carry his burden under the **Strickland** test for ineffective assistance of counsel). Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/26/2017